IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMI ALI MOHAMMAD KANAAN, a/k/a "Rami Kanaan"<br><br>Defendant. | CASE NO.: 26 CR 551<br><br>JEANNICE W. APPENTENG<br>Magistrate Judge |

**<u>THE GOVERNMENT'S DETENTION MEMORANDUM</u>**

The United States of America, by and through counsel, Andrew S. Boutros, United States Attorney, and Vincenza Lamonica Tomlinson, Assistant United States Attorney, respectfully submits this Detention Memorandum to aid the Court in considering the necessity of detaining the Defendant, Rami Kanaan, after two unindicted co-conspirators fled the United States by flying from Chicago, Illinois, to the Hashemite Kingdom of Jordan on October 23, 2026, two days after the Defendant was arrested on October 21, 2026.

## I. BACKGROUND

Defendant Rami Kanaan, aka Rami Ali Mohammad Kanaan, 36 was born in the Hashemite Kingdom of Jordan and became a naturalized United States citizen in 2017. Kanaan was charged with Jorag Yaseen, aka Gorag Taher Yaseen, 38, who was also born in the Hashemite Kingdom of Jordan and became a naturalized United States citizen in 2012. On October 13, 2026, Kanaan and Yaseen were charged in a five-count indictment in the Southern District of Ohio, *United States v. Jorag Yaseen, et al.*, Case No. 3:26-CR-99, Judge Thomas M. Rose, with one count of Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349), three counts of Wire Fraud (18 U.S.C. §

1343), and one count of Money Laundering Conspiracy (18 U.S.C. § 1956(h)) for their roles in a nationwide Supplemental Nutrition Assistance Program[1] (SNAP) benefits fraud case.

Kanaan owned and operated a small retail food store known as Half Moon Grocery, Inc. (hereinafter "Half Moon") at 360 E. 79th Street, Chicago, Illinois, as shown in the photograph below:




[1] SNAP is a federally funded national nutrition aid program administered by the United States Department of Agriculture through its Food and Nutrition Service Administration. SNAP provides food benefits to low-income families to supplement their grocery budget so they can afford the nutritious food essential to health and well-being.

Co-defendant Yaseen owned and operated a small retail food store known as Englewood Food Wholesale Market, Inc. (hereinafter "Englewood") at 5901 S. Racine Avenue, Chicago, Illinois, as shown in the photograph below:




The Defendants were part of a criminal network that operated stores that could accept SNAP benefits in the form of Electronic Benefit Transfer (EBT) cards. The Defendants illegally and improperly used stolen EBT cards to be fraudulently processed, scanned, or swiped using point-of-sale devices from their stores. The Defendants represented that the transactions were bona fide purchases for SNAP-eligible items, when the Defendants knew they were not. The Defendants fraudulently intended to seek improper reimbursements of federal funds for these fictitious transactions. The table below summarizes the Defendants' redemptions in the criminal network from stolen EBT cards in Ohio and across the United States.

| Retailer | Total Redemptions | Ohio Redemptions |
|---|---|---|
| Englewood Food Wholesale Market | $ 7,777,527.77 | $ 1,218,853.88 |
| Half Moon Grocery Inc | $ 3,965,302.36 | $ 241,107.76 |
| Additional Store 1 | $ 3,273,730.15 | $ 113,085.32 |
| Additional Store 2 | $ 2,680,425.59 | $ 143.22 |
| Additional Store 3 | $ 2,614,918.27 | $ 148,642.31 |
| Additional Store 4 | $ 2,485,309.04 | $ 60,899.82 |
| Additional Store 5 | $ 2,314,559.15 | $ 11,383.23 |
| Additional Store 6 | $ 2,204,685.07 | $ 8,791.24 |
| Additional Store 7 | $ 1,715,559.44 | $ 188.85 |
| Additional Store 8 | $ 691,044.45 | $ - |
| | $ 29,723,061.29 | $ 1,803,095.63 |

The Defendants defrauded thousands of victims from 48 states in the United States of over $29.7 million—figures that are growing as the government continues to investigate.

The Defendants have used their ill-gotten gains to improperly enrich themselves and purchase automobiles for use and shipment overseas to countries such as the Hashemite Kingdom of Jordan, the Republic of Iraq, the State of Libya, and the Lebanese Republic.

## III. LAW AND ARGUMENT

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a

> (A) a serious risk that such person will flee; or
>
> (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness.

18 U.S.C. § 3142(e). In particular, if a court determines that the United States is entitled to a detention hearing under § 3142(f), the Court must conduct a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community under § 3142(e). If no set of conditions can reasonably assure appearance and safety, the Court must order detention. 18 U.S.C. § 3142(e). The Court considers the factors under § 3142(g) in making that determination.

A. No Condition or Combination of Conditions will Reasonably Assure the Appearances of the Defendant as Required.

The United States maintains no condition or combination of conditions will reasonably assure the Defendant's appearances.

a. Every Applicable Factor Cuts Against the Defendant's Release.

This Court considers the following factors in determining a defendant's suitability for release:

1. the nature and circumstances of the offense;

2. the weight of the evidence against the defendant;

3. the history and characteristics of the defendant; and

4. the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release (the United States is not asserting personal physical danger at this time, but is asserting economic and societal harm).

18 U.S.C. § 3142(g). In addition, this Court also rightfully considers "whether the defendant has ties to other countries which would make it possible or likely for him to leave the United States" in determining a risk of nonappearance. United States v. Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *4 (N.D. Ohio May 3, 2022), report and recommendation adopted, No. 3:22 CR 76, 2022 WL 1803337 (N.D. Ohio June 2, 2022) (quoting United States v. Cabrera, No. 2:09-CR- 287(2), 2009 WL 5167668, at *4 (S.D. Ohio Dec. 18, 2009)). Here, the Defendant has ties to the Hashemite Kingdom of Jordan. The Defendant has also previously traveled internationally to the Hashemite Kingdom of Jordan in 2025 and 2022, and the United Mexican States in 2021.

i. Nature and Circumstances of the Offense.

The Defendant is a member of a repulsive conspiracy that seeks to steal money from vulnerable United States citizens receiving EBT assistance. The consequences of this conduct

are all-encompassing. Victims report that they are left with absolutely nothing to sustain their food budgets going forward after having their benefits stolen. In addition, individual victims are ashamed and deprived of the trust they once had in government assistance programs and their fellow human beings. From a larger perspective, trust in the law is eroded by these criminals posing as legitimate grocery stores to commit their fraud crimes.

The Defendant faces stark penalties for his crimes. If convicted, the Defendant faces up to 20 years of imprisonment, fines that begin at up to $250,000 and will end up much greater, up to 3 years of supervised release, and a special assessment of $100, for each count. The Defendant's potential lengthy period of incarceration incentivizes potential flight. See Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *5, citing United States v. Kiper, No. 3:22-ce-00003, 2022 WL 943958, at *3 (E.D. Ky. Mar. 29, 2022); United States v. Shuklin, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties ... provide a strong incentive to flee").

After the Defendant was arrested on October 21, 2026, two days later, on October 23, 2026, two unindicted co-conspirators fled the United States by flying from Chicago, Illinois to the Hashemite Kingdom of Jordan.

Overall, the Defendant appears to have very little waiting for him in the Southern District of Ohio. If allowed to travel, the United States will not have the means to stop the Defendant from fleeing elsewhere or to the Hashemite Kingdom of Jordan, where he was born. He will have every incentive to do so. This factor cuts in favor of detention.

ii. Weight of the Evidence Against the Defendant.

The Defendant have no community or family ties to the Southern District of Ohio, "which constitutes a proper basis for finding potential flight risk." Hanson, No. 3:22-CR-00076, 2022

WL 1813585, at *5, United States v. Johnson, No. 2:17-CR-20489, 2020 WL 1821099, at *4 (E.D. Mich. Apr. 10, 2020) (stating that because "Johnson has no strong community or family ties in this district, the Court is also concerned that Johnson poses a flight risk"), appeal dismissed, No. 20-1432, 2020 WL 6580176 (6th Cir. May 20, 2020); United States v. Ho, No. 3:16-CR-46, 2016 WL 5875005, at *5 (E.D. Tenn. Oct. 7, 2016) (noting that a lack of ties to the state where charges were brought "is evidence of a risk of flight") (citing cases), aff'd, No. 16-6561, 2016 WL 10077327 (6th Cir. Dec. 9, 2016); United States v. Cashin, 739 F. Supp. 1107, 1111 (E.D. Mich. 1990) (reasoning that defendant's lack of "professional or financial ties to the community other than his illegal activities" was "a very serious obstacle to [his] release pending trial").

Members of the conspiracy used aliases in furtherance of the conspiracy. "Courts have found that use of false names supports a finding of flight risk." Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *5, citing United States v. Isaacs, 469 F. Supp. 3d 801, 804 (S.D. Ohio 2020). Location monitoring does nothing to ameliorate the Defendant's flight concerns. This is not a case where the Defendant may go to another city or state, from which they could feasibly be located and brought back. No, the Defendant's incentive is to go to the other side of the world. This factor cuts against pretrial release.

iii. History and Characteristics

The Defendant's characteristics are best displayed by his disgusting conduct–that is, stealing money from low-income families, including the elderly, widows, single mothers, and children from SNAP fraud.

The Defendant's prior criminal history includes OVI (2/4/2024), Aggravated Assault, Battery (6/14/24); Domestic Battery (11/12/2015); and a traffic offense of No Driver's License

(9/20/12). The Defendant's conduct here, spits in the face of both the law and human dignity, cuts against pre-trial release.

iv. Danger to the Community

The "danger to any person or the community" language in § 3142(g)(4) "is not limited to the danger of physical violence." Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *7, citing Isaacs, 469 F. Supp. 3d at 804. The economic and societal harm resulting from economic and exploitive offenses may appropriately be considered under this factor. Ids.

The Defendant and his cohorts have caused harm to the community in millions of dollars. This harm has been perpetrated on one of the most vulnerable segments of society: the poor. There is profound harm associated with releasing a person who came to the United States, because a United States citizen, and causes this terrible harm. This factor also weighs in favor of pretrial detention.

## IV. CONCLUSION

Considering all of the § 3142(g) factors and evaluating the evidence as a whole, it is clear that there is no condition or combination of conditions that will reasonably ensure the Defendant will appear as required. As such, the United States respectfully requests that this Court order the Defendant to be detained pending trial in this case.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/ Vincenza Lamonica Tomlinson
Vincenza Lamonica Tomlinson
Assistant United States Attorney
Northern District of Illinois
219 S. Dearborn, Suite 500
Chicago, IL 60604
(312) 353-5496
(312) 371-3019
Vincenza.Tomlinson@usdoj.gov